## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
#### *EASTERN DIVISION*

| | |
|---|---|
| In re:<br><br>INGEAR CORPORATION,<br><br>               Debtor. | Chapter 11<br>Case No. 08-02824<br><br><br>Hon. Pamela S. Hollis |

### AGREED INTERIM ORDER (A) AUTHORIZING DEBTOR-IN-POSSESSION TO OBTAIN POST-PETITION FINANCING PURSUANT TO SECTION 364 OF THE BANKRUPTCY CODE, (B) GRANTING LIENS, SECURITY INTERESTS AND SUPERPRIORITY CLAIMS, AND (C) SCHEDULING A FINAL HEARING

Upon the motion (the **"Motion"**) of InGEAR Corporation, Debtor and Debtor-in-Possession (the **"Debtor"** or **"InGEAR"**) in the above-captioned Chapter 11 Case (the **"Case"**) for the entry of an agreed interim order (the **"Interim Order"**), pursuant to section 364 of Title 11 of the United States Code (the **"Code"**), Rule 4001(c) of the Federal Rules of Bankruptcy Procedure (the **"Bankruptcy Rules"**), and Local Bankruptcy Rule 4001-2, (a) authorizing the Debtor to obtain post-petition financing pursuant to section 364 of the Bankruptcy Code from LaSalle Business Credit, LLC (**"LaSalle"** or **"Post-Petition Lender"**), subject to the terms and conditions set forth herein, and in the Loan and Security Agreement dated as of February _14_, 2008, a copy of which is attached hereto as Exhibit A (the **"DIP Loan Agreement"**), (b) granting security interests, mortgages and other liens and superpriority claims to the Post-Petition Lender, pursuant to sections 364(d)(1), 364(c)(1), (2) and (3) of the Bankruptcy Code, all as more fully set forth herein, and (c) scheduling a final hearing, pursuant to Rule 4001(c) of the Federal Rules of Bankruptcy Procedure, and upon the proceedings

held before this Court after due and proper notice to all parties entitled thereto, and good and sufficient cause appearing therefor,

THE PARTIES STIPULATE, AND, WITH RESPECT TO THE MATTERS IN PARAGRAPHS A, B, I, K, L, M, and N THE COURT FINDS AS FOLLOWS:

A.      On February 7, 2008 (the "**Petition Date**"), the Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  The Debtor is managing its property as Debtor-in-Possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  There is presently no pending request or motion for appointment of a trustee or examiner, and no official committee has yet been appointed in the Case.

B.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. §1334(a).  This is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(D).  Venue of the Case and the Motion in this district is proper pursuant to 28 U.S.C. §1408.

C.      The Debtor is a corporation organized under the laws of Illinois. The Debtor's principal office is located at 650 Lake Cook Road, in Buffalo Grove, Illinois 60089. The Debtor is a designer, manufacturer, and marketer of a broad range of luggage, backpacks, sports bags, and soft sided coolers to major retailers in the United States and Canada. The Debtor also sells products under a number of licensed brand names, including Coleman, Championathleticwear, Spalding and Hummer.

D.      Pursuant to that certain Loan and Security Agreement dated April 24, 2007 (including all schedules, exhibits and attachments thereto, collectively, the "**Loan Agreement** ") by and between LaSalle and InGEAR, LaSalle provided loans and other financial accommodations to InGEAR to, *inter alia,* fund the Debtor's operations. As of the Petition Date, InGEAR owed LaSalle approximately $9,754,523.64, consisting of principal in the amount of $8,943,247.86, $776,243.44 in outstanding letters of credit,

$16,523.34 in accrued interest, and approximately $18,500 in attorneys' fees (the **"Pre-Petition Debt"**), pursuant to the Loan Agreement.

E.     Pursuant to that certain Note Purchase Agreement dated as of June 7, 2004 by and between Peninsula Fund III Limited Partnership, a Delaware limited partnership (**"Peninsula"**), and InGEAR, as amended by that certain First Amendment to Note Purchase Agreement dated as of April 10, 2006 by and among InGEAR, HIG InGEAR, Inc., a Cayman Island corporation, and Peninsula, as amended by that certain Second Amendment to Note Purchase Agreement dated as of April 24, 2007 by and between InGEAR and Peninsula, Peninsula made certain loans to InGEAR in the aggregate principal amount of $8,000,000 (the **"Peninsula Debt"**), which Peninsula Debt is secured by all assets of InGEAR on or which LaSalle has a lien to secure the Pre-Petition Debt, but excluding InGEAR's Protege Trademark, Reg. No. 276202. Pursuant to that certain Subordination Agreement dated as of April 24, 2007 by and between Peninsula and LaSalle (the **"Peninsula Subordination Agreement"**), the Peninsula Debt, and the liens securing the Peninsula Debt, are subordinated in all respects to all obligations, liabilities and indebtedness owing from InGEAR to LaSalle under the Loan Agreement, including, without limitation, the Pre-Petition Debt (collectively, the **"LaSalle Debt"**), and the Senior Pre-Petition Liens (as defined below). In addition, pursuant to Section 3(e) of the Peninsula Subordination Agreement, Peninsula has agreed that it will not object to or oppose any DIP financing by LaSalle to InGEAR on such terms and conditions as LaSalle, in its sole discretion, may decide so long as the aggregate principal amount of such financing together with the aggregate outstanding principal amount of the LaSalle Debt does not exceed the amount of $28,750,000, and has agreed that InGEAR may grant to LaSalle liens and security

interests upon all of the property of InGEAR to secure payment of all LaSalle Debt and all other financing provided by LaSalle, including the DIP financing, which liens shall be superior in priority to the liens and security interests, if any, in favor of Peninsula on the property of InGEAR.

F. Lawrence M. Gutkin, Lawrence Wojciak, Kevin J. Achatz, Terrence Muldoon, Brian Hamlin, Ronald Kovich, William Duncan, Thomas Banach, David Anderson, David Nixon, Visual Marketing Associates, Inc., and H.I.G. InGear, Inc. (collectively, the **"Subordinated Creditors"**), have made certain loans to InGEAR in the aggregate original principal amount of $4,440,000 (the **"Subordinated Debt"**), as evidenced by those certain Junior Subordinated Promissory Notes made by InGEAR to each of the Unsecured Subordinated Creditors. Pursuant to that certain Subordination Agreement dated as of April 24, 2007 by and among the Subordinated Creditors, Peninsula and LaSalle (the **"Subordinated Creditors' Subordination Agreement"**), the Subordinated Debt is subordinated in all respects to the LaSalle Debt (and to the Senior Pre-Petition Liens (as defined below)) and the Peninsula Debt. In addition, pursuant to Section 3(e) of the Subordinated Creditors' Subordination Agreement, Subordinated Creditors have agreed that they will not object to or oppose any DIP financing by LaSalle to InGEAR on such terms and conditions as LaSalle, in its sole discretion, may decide, and have agreed that InGEAR may grant to LaSalle liens and security interests upon all of the property of InGEAR to secure payment of all LaSalle Debt and all other financing provided by LaSalle, including such DIP financing, which liens shall be superior in priority to the liens and security interests, if any, in favor of the Subordinated Creditors on the property of InGEAR.

G.    To secure payment of the LaSalle Debt, including, without limitation, the

Pre-Petition Debt, the Debtor granted to LaSalle, pursuant to the Loan Agreement, a

senior security interest (the **"Senior Pre-Petition Security Interest"**) in all of the

following property of the Debtor, whether then, now or hereafter owned, existing,

acquired or arising and wherever then, now or hereafter located (all of the following

capitalized terms shall have the respective meanings assigned to such terms in the

Illinois Uniform Commercial Code, as may be in effect from time to time): (a) all

Accounts and all Goods whose sale, lease or other disposition by the Debtor has given

rise to Accounts and have been returned to, or repossessed or stopped in transit by, the

Debtor;  (b) all Chattel Paper, Instruments, Documents and General Intangibles

(including, without limitation, all patents, patent applications, trademarks, trademark

applications, trade names, trade secrets, goodwill, copyrights, copyright applications,

registrations, licenses, software, franchises, customer lists, tax refund claims, claims

against carriers and shippers, guarantee claims, contract rights, payment intangibles,

security interests, security deposits and rights to indemnification); (c) all Inventory;

(d) all Goods (other than Inventory), including, without limitation, Equipment, vehicles

and Fixtures; (e) all Investment Property; (f) all Deposit Accounts, bank accounts,

deposits and cash; (g)  all Letter-of-Credit Rights; (h) Commercial Tort Claims listed in

the Loan Agreement; (i) any other property of the Debtor now or hereafter in the

possession, custody or control of Lender or any agent or any parent, affiliate or

subsidiary of LaSalle or any participant with LaSalle in the loans to the Debtor, for any

purpose (whether for safekeeping, deposit, collection, custody, pledge, transmission or

otherwise) and (j) all additions and accessions to, substitutions for, and replacements,

products and Proceeds of the foregoing property, including, without limitation, proceeds

of all insurance policies insuring the foregoing property, and all of the Debtor's books
and records relating to any of the foregoing and to the Debtor's business (referred to
herein collectively as the **"Senior Pre-Petition Collateral,"** and the liens created by
such security interest shall be hereinafter referred to as the **"Senior Pre-Petition
Liens"**).  LaSalle perfected the Senior Pre-Petition Liens on the Senior Pre-Petition
Collateral by: (i) filing a UCC-1 financing statement with the Illinois Secretary of State on
April 17, 2007, Filing No. 12011555; (ii) recording that certain Trademark Security
Agreement dated as of April 24, 2007 made by InGEAR in favor of LaSalle, together
with the Recordation Form Cover Sheet, with the United States Patent and Trademark
Office on May 3, 2007, in Reel/Frame: 003536/0397; (iii) recording that certain
Trademark Security Agreement dated as of April 24, 2007 made by InGEAR in favor of
LaSalle, together with Recordation Form Cover Sheet, with the United States Patent
and Trademark Office on May 3, 2007, in Reel/Frame: 003702/0610; (iv) recording that
certain Copyright Security Agreement dated as of April 24, 2007 by and between
InGEAR and LaSalle, together with the Document Cover Sheet, with the United States
Copyright Office on May 7, 2007, as Document No. V3551D768; (v) registering a
financing statement in the Province of Ontario pursuant to the provisions of the *Personal
Property Security Act* (Ontario) on May 3, 2007, as Registration No. 20070503 1004
1590 4169; (vi) obtaining that certain Deposit Account Control Agreement dated as of
April 24, 2007 executed by and among InGEAR, LaSalle and Fifth Third Bank.

H.     The Debtor acknowledges that the Senior Pre-Petition Liens constitute
valid, binding, enforceable, and perfected first-priority liens on the Senior Pre-Petition
Collateral, and are not subject to avoidance or subordination pursuant to the Bankruptcy
Code or applicable non-bankruptcy law. The Debtor further acknowledges that (a) the

Senior Pre-Petition Indebtedness constitutes a legal, valid and binding obligation of the Debtor, enforceable in accordance with its terms (other than in respect of the stay of enforcement arising from section 362 of the Bankruptcy Code), and (b) is not subject to objection, offset, defenses, counterclaims, recoupment, subordination or recharacterization. **FINALLY, THE DEBTOR HEREBY WAIVES, RELEASES AND DISCHARGES LASALLE, AND ITS AFFILIATES, AGENTS, ATTORNEYS, OFFICERS, DIRECTORS AND EMPLOYEES, FROM ANY AND ALL CLAIMS AND CAUSES OF ACTION ARISING OUT OF, BASED UPON, OR RELATED TO, IN WHOLE OR IN PART, THE LOAN AGREEMENT, THE LASALLE DEBT, INCLUDING, WITHOUT LIMITATION, THE PRE-PETITION DEBT, ANY ASPECT OF THE PRE-PETITION RELATIONSHIP BETWEEN LASALLE AND THE DEBTOR, AND ANY ACTS OR OMISSIONS BY LASALLE IN CONNECTION WITH LOAN AGREEMENT, OR THE LASALLE DEBT, INCLUDING, WITHOUT LIMITATION, THE PRE-PETITION DEBT. SUBJECT TO PARAGRAPH 8 BELOW, THIS WAIVER IS NOT BINDING ON ANY STATUTORY COMMITTEE OF UNSECURED CREDITORS APPOINTED IN THE CASE (THE "COMMITTEE").**

I.      An immediate and critical need exists for the Debtor to obtain funds in order to preserve the value of the Debtor's assets. The Debtor is unable to obtain the required funds in the form of (i) unsecured credit or unsecured debt allowable under section 503(b)(1) of the Code as an administrative expense pursuant to section 364(a) or (b) of the Code, (ii) unsecured debt having the priority afforded by section 364(c)(1) of the Code, or (iii) debt secured as described in section 364(c)(2) or (3) or section 364(d) of the Code except as set forth herein.

J.      Except with respect to certain factored accounts factored by the CIT Group/Commercial Services, Inc. ("CIT") pursuant to that certain Amended and Restated Non-Notification Factoring Agreement by and between InGEAR and CIT, LaSalle asserts, and the Debtor acknowledges, that substantially all of the Debtor's assets are subject to the Senior Pre-Petition Liens and the Junior Pre-Petition Lenders' Liens. LaSalle objects to any use of the Senior Pre-Petition Collateral by the Debtor, except under the terms of this Interim Order and the DIP Loan Agreement.

K.      LaSalle has indicated a willingness to consent and agree to the financing arrangements contemplated by this Interim Order, and the DIP Loan Agreement, and LaSalle is willing to provide the additional financing contemplated herein, all subject to the conditions and provisions of this Interim Order and the DIP Loan Agreement assuring, inter alia, that the Post-Petition Liens (as defined below) and the various claims, superpriority claims and other protections granted pursuant to this Interim Order will not be affected by any subsequent reversal or modification of this Interim Order or any other order, as provided in section 364(e) of the Code, which is applicable to the post-petition financing arrangement contemplated by this Interim Order and the DIP Loan Agreement. LaSalle has acted in good faith in consenting to, and in agreeing to provide the post-petition financing contemplated by, this Interim Order and the DIP Loan Agreement. LaSalle's reliance on the assurances referred to above is in good faith, and LaSalle is entitled to the benefits of section 364(e) of the Bankruptcy Code.

L.      Notice of the hearing on the Motion and this Interim Order has been provided (by hand, telecopy, overnight mail or courier) to counsel to LaSalle, Peninsula, each of the Subordinated Creditors, the United States Trustee for the Northern District of Illinois (the **"United States Trustee"**), the 20 largest unsecured creditors of the

Debtor, and other entities claiming liens on or security interests in the Junior Pre-Petition Collateral and the Senior Pre-Petition Collateral, to the extent such claims are evidenced by filings of UCC financing statements in the appropriate jurisdiction or secured by statutory liens.  In view of the urgency of the relief requested, such notice constitutes sufficient and proper notice under section 102(1) of the Bankruptcy Code and Bankruptcy Rule 4001 and no other notice need be given.

M.     Good cause has been shown for the entry of this Interim Order.  Among other things, entry of this Interim Order will allow the Debtor to protect the value of the Debtor's estate.  The financing arrangement authorized hereunder is vital to avoiding immediate and irreparable harm to the Debtor's estate.   Consummation of such financing therefore is in the best interests of the Debtor's estate.

N.     The financing arrangements authorized hereunder have been negotiated in good faith and at arm's length among the Debtor and LaSalle.  The terms of such financing arrangements are fair and reasonable under the circumstances, reflect the Debtor's exercise of prudent business judgment consistent with its fiduciary duties, and are supported by reasonably equivalent value and fair consideration.  As such, the Debtor and LaSalle are entitled to the protections provided by section 364(e) of the Bankruptcy Code.

THEREFORE, IT IS HEREBY ORDERED AND ADJUDGED THAT:

1.     The Motion is granted and the DIP Loan Agreement is hereby approved.

2.     <u>Authorization to Borrow.</u>

(a)     Pending the entry of a final order (the **"Final Order"**) authorizing post-petition financing, subject to the terms of this Order and the DIP Loan Agreement, the Debtor is hereby authorized to borrow up to $1,536,000 from LaSalle, (which

amount shall include letters of credit which may be issued by LaSalle through March 12, 2008 (the **"Post-Petition Loan"**).  The Post-Petition Loan shall be governed by the terms of this Interim Order, and the provisions of the DIP Loan Agreement, and the Debtor shall perform its obligations hereunder and thereunder.

(b)    The Post-Petition Loan shall be used only for the purposes, and up to the amounts listed, in the budget attached hereto as Exhibit B, or in such other budget to which the Post-Petition Lender may agree, in its sole discretion (the *provided, however, that $37,500 of the facilities fee shall be paid* **"Approved Budget"**).  Notwithstanding the foregoing, the Debtor shall be deemed to be *payment of the* ~~and the remainder shall be~~ *entry of this Order* in compliance with the Approved Budget so long as its aggregate cash disbursements, *during* *pending the Final* measured on a weekly basis, are less than 110% of the amount provided for in each *Hearing* line item of the Approved Budget for each week.  The Debtor shall use its best efforts not to exceed the weekly aggregate amount of cash disbursements set forth in the Approved Budget, except when doing so is absolutely necessary to the preservation of the Debtor's assets.  Anything herein to the contrary notwithstanding, any expenses budgeted for a particular week but not paid during that week may be paid in subsequent weeks prior to the Termination Date.  On Tuesday of each week, the Debtor shall deliver to LaSalle a variance report (i) comparing, for the preceding week, actual sales, receipts and expenditures to budgeted sales and receipts for that week's expenditures, and (ii) explaining any material variance between budgeted and actual results.  Further, the Debtor shall permit LaSalle and professionals retained either by LaSalle or by its counsel, reasonable access to the Debtor's premises and books and records during business hours.

(c)    The Debtor is authorized to enter into such non-material modifications and amendments to the Approved Budget without further Court order as

may be agreed upon in writing by the Debtor and LaSalle, after notice either to the Committee, if and when one is appointed, or to the United States Trustee, until a Committee is appointed.

      3.    <u>Post-Petition Security Interests</u>.

Pursuant to sections 364(c)(2) and (3) and 364(d)(1) of the Code, as security for the Post-Petition Loan, LaSalle is hereby granted valid, binding, enforceable and perfected liens (the **"Post-Petition Liens"**) in all currently-owned or hereafter-acquired property and assets of the Debtor of any kind or nature, whether real or personal, tangible or intangible, wherever located, now owned or hereafter acquired or arising (other than avoidance actions by the Debtor's estate, and proceeds thereof, under Chapter 5 of the Code), and all proceeds, products, rents and profits thereof, including, without limitation, all types of property which served as the Senior Pre-Petition Collateral and the proceeds, products, rents and profits of all of the foregoing (all of the foregoing, the **"Post-Petition Collateral"**).  Except as otherwise provided in subsection (c) of this Section 3, the Post-Petition Liens on the Post-Petition Collateral shall be (a) first and senior perfected liens, pursuant to section 364(d)(1) of the Code, on the Post-Petition Collateral which, on the Petition Date, constituted the Senior Pre-Petition Collateral, (b) first and senior perfected liens pursuant to section 364(c)(2) of the Code on any Post-Petition Collateral which was not subject to perfected liens, security interests, or statutory liens on the Petition Date, and (c) junior perfected liens pursuant to section 364(c)(3) of the Code on Post-Petition Collateral which, on the Petition Date, was subject to any valid and perfected lien or valid statutory lien in favor of an entity other than LaSalle, which lien, on the Petition Date, was senior to LaSalle's Senior Pre-Petition Liens, which junior perfected liens of LaSalle shall be (i) senior to any junior

pre-petition lien of Peninsula or the Subordinated Creditors and (ii) junior to valid and perfected pre-petition liens on assets on which LaSalle did not have a pre-petition lien. Except as expressly set forth in this Interim Order, the liens and security interests granted in this Interim Order shall not be:  (y) subject to any lien which is avoided and preserved for the benefit of the Debtor's estate under section 551 of the Bankruptcy Code or (z) subordinated to or made pari passu with any other lien created pursuant to an Order of the Court under section 364(d) of the Bankruptcy Code or otherwise.

    4.    <u>WAIVER OF CLAIMS UNDER SECTION 506(C)</u>.

NOTHING CONTAINED IN THIS INTERIM ORDER OR ANY FINAL ORDER SHALL BE DEEMED TO CONSTITUTE A CONSENT BY LASALLE TO ANY CHARGE, LIEN, ASSESSMENT OR CLAIM ON OR AGAINST THE SENIOR PRE-PETITION COLLATERAL OR THE POST-PETITION COLLATERAL UNDER SECTION 506(C) OF THE CODE OR OTHERWISE.  LASALLE RESERVES ITS RIGHT TO SEEK A WAIVER OF THE DEBTOR'S RIGHTS UNDER SECTION 506(C) OF THE CODE AT THE FINAL HEARING.

    5.    <u>Section 364(c)(1) Priority</u>.

In addition to the foregoing Post-Petition Liens, the Post-Petition Loan shall have priority in accordance with the provisions of section 364(c)(1) of the Code over all administrative expenses of the kind specified in sections 503(b) and 507(b) of the Code ("**Superpriority**").  Neither (a) costs or administrative expenses that have been or may be incurred in the Case, in any Chapter 7 case following conversion of a Debtor's Chapter 11 Case pursuant to section 1112 of the Code, or in any other proceeding related thereto, nor (b) priority claims, including, without limitation, any other superpriority claims, are or will be senior to, or on a parity with, (i) the claims of the

Senior Pre-Petition Lender or Post-Petition Lender against the Debtor that arise or may arise, as applicable, out of the Post-Petition Loan or any provision of this Interim Order or (ii) the liens and security interests granted herein on, in, and to the Post-Petition Collateral.

6.    Modification of Automatic Stay.

The automatic stay extant under section 362(a) of the Code is hereby modified to the extent necessary to permit LaSalle to receive, collect and apply payments and proceeds in respect of the Senior Pre-Petition Collateral and the Post-Petition Collateral in accordance with the terms and provisions of the DIP Loan Agreement.

7.    Termination Date and Enforcement of Event of Default.

(a)    The Debtor's authority to borrow pursuant to the terms of the Interim Order shall terminate, without notice to the Debtor or further leave of Court (i) automatically on March 12, 2008, unless a Final Order acceptable to LaSalle in its sole discretion is entered on or prior to such date, or (ii) after an Event of Default as defined in the DIP Loan Agreement (in either case, the **"Termination Date"**), unless, following the occurrence of an Event of Default, such authority is extended by the written agreement of the Debtor and LaSalle, provided, however, nothing herein shall obligate LaSalle to make any advances after the Termination Date.  All outstanding amounts of the Post-Petition Loan shall be due and payable at 11:00 a.m. Chicago time on the Termination Date.

(b)    UPON THE OCCURRENCE OF AN EVENT OF DEFAULT AND AT ANY TIME THEREAFTER, THE AUTOMATIC STAY IMPOSED BY SECTION 362(A) OF THE CODE SHALL BE LIFTED UPON MOTION BY LASALLE AND AN ORDER OF THIS COURT, SO THAT LASALLE MAY EXERCISE THE

RIGHTS GRANTED TO LASALLE HEREUNDER AND IN THE DIP LOAN AGREEMENT AS TO ALL OR SUCH PART OF THE SENIOR PRE-PETITION COLLATERAL OR THE POST-PETITION COLLATERAL, AS LASALLE, IN ITS SOLE DISCRETION, SHALL ELECT, INCLUDING, WITHOUT LIMITATION, THE RIGHT TO TAKE POSSESSION OF AND SELL THE SENIOR PRE-PETITION COLLATERAL OR THE POST-PETITION COLLATERAL IN ACCORDANCE WITH THE TERMS OF THE UNIFORM COMMERCIAL CODE TO SATISFY SENIOR PRE-PETITION INDEBTEDNESS OR THE POST-PETITION INDEBTEDNESS, AS APPLICABLE. Subject to the rights of holders of any prepetition liens senior to the Senior Pre-Petition Liens, LaSalle shall be entitled to apply the proceeds of the Senior Pre-Petition Collateral and the Post-Petition Collateral in accordance with the provisions of this Interim Order and the DIP Loan Agreement.

(c)     Notwithstanding the occurrence of the Termination Date or anything herein to the contrary, all of the liens, rights, remedies, benefits and protections provided to LaSalle under this Interim Order and under the DIP Loan Agreement, including, without limitation, the liens and Superpriority granted herein, shall survive the Termination Date.

(d)     Notwithstanding anything herein to the contrary, no proceeds of the Post-Petition Loan, the Senior Pre-Petition Collateral or the Post-Petition Collateral shall be used for the purpose of: (i) objecting to or contesting in any manner, or raising any defenses or objections to, the validity, extent, perfection, priority, of the Pre-Petition Debt, the Senior Pre-Petition Liens, or the Senior Pre-Petition Security Interest, or any other rights or interest of LaSalle, or in asserting any claims or causes of action, including, without limitation, any actions under chapter 5 of the Code against LaSalle;

(ii) preventing, hindering, or delaying LaSalle's enforcement of the Senior Pre-Petition Liens, the liens granted to LaSalle in or realization upon any of the Senior Pre-Petition Collateral or the Post-Petition Collateral; (iii) using Cash Collateral or selling any Collateral except as specifically permitted in this Interim Order, in the DIP Loan Agreement or by order of the Court; (iv) incurring indebtedness except as permitted by this Interim Order; or (v) modifying LaSalle's rights hereunder.

8.    INTERIM ORDER; INVESTIGATION PERIOD.

THE FINDINGS AND STIPULATIONS CONTAINED IN PARAGRAPHS D THROUGH H ABOVE, AND THE REPAYMENT OF THE PRE-PETITION INDEBTEDNESS PROVIDED FOR IN THE DIP LOAN AGREEMENT, SHALL BE BINDING UPON ALL CREDITORS AND PARTIES IN INTEREST, INCLUDING WITHOUT LIMITATION, THE DEBTOR AND ANY STATUTORY COMMITTEE OR COMMITTEES APPOINTED IN THE CASE, AND ANY TRUSTEE SERVING IN THIS CHAPTER 11 CASE OR IN AY CHAPTER 7 CASE OF THE DEBTOR, UNLESS: (A) A PARTY IN INTEREST WITH STANDING TO DO SO HAS FILED AN ADVERSARY PROCEEDING CHALLENGING (I) THE AMOUNT, VALIDITY, ENFORCEABILITY, PERFECTION OR PRIORITY OF THE PRE-PETITION DEBT, (II) THE SENIOR PRE-PETITION LIENS ON THE SENIOR PRE-PETITION COLLATERAL, OR (III) OTHERWISE ASSERTING ANY CLAIMS OR CAUSES OF ACTION AGAINST LASALLE ON BEHALF OF THE DEBTOR'S ESTATE, NO LATER THAN THE DATE THAT IS SEVENTY-FIVE (75) DAYS AFTER THE ENTRY OF THIS INTERIM ORDER, AND, IN THE CASE OF A COMMITTEE, IF FORMED, OR A CHAPTER 11 OR 7 TRUSTEE, IF ONE IS APPOINTED, NO LATER THAN A DATE THAT IS SIXTY (60) DAYS AFTER THE APPOINTMENT OF SAID COMMITTEE (THE "**INVESTIGATION**

**PERIOD"**); AND (B) THE COURT RULES IN FAVOR OF THE PLAINTIFF IN ANY SUCH TIMELY FILED ADVERSARY PROCEEDING AND SUCH RULING BECOMES FINAL AFTER THE COMPLETION OF ALL FORMS OF APPELLATE REVIEW OR THE TIME FOR SEEKING SUCH REVIEW HAS LAPSED WITHOUT REVIEW BEING REQUESTED. STANDING TO FILE THE ADVERSARY PROCEEDING DESCRIBED IN SECTION (A) OF THIS SECTION IS HEREBY CONFERRED UPON ANY COMMITTEE FORMED IN THE CASE. IF NO SUCH ADVERSARY PROCEEDING IS COMMENCED DURING THE INVESTIGATION PERIOD, (W) THE REPAYMENT OF THE PRE-PETITION DEBT PURSUANT TO THE TERMS OF THE DIP LOAN AGREEMENT SHALL BE DEEMED FINAL AND INDEFEASIBLE, NOT SUBJECT TO OBJECTION, DEFENSE, SET-OFF, RECOUPMENT, RECHARACTERIZATION OR SUBORDINATION AND OTHERWISE UNAVOIDABLE, (X) THE PRE-PETITION DEBT SHALL CONSTITUTE AN ALLOWED CLAIM, FOR ALL PURPOSES IN THE CASE AND IN ANY SUBSEQUENT CASE UNDER CHAPTER 7 OF THE BANKRUPTCY CODE, (Y) THE SENIOR PRE-PETITION LIENS ON THE SENIOR PRE-PETITION COLLATERAL SHALL BE DEEMED LEGAL, VALID, BINDING, AND PERFECTED, AND NOT SUBJECT TO AVOIDANCE, DEFENSE, COUNTERCLAIM, OFFSET OF ANY KIND, OR SUBORDINATION, NOR SHALL EITHER THE PRE-PETITION DEBT, OR THE SENIOR LIENS ON THE SENIOR PRE-PETITION COLLATERAL, BE SUBJECT TO ANY OTHER OR FURTHER CHALLENGE BY ANY PARTY IN INTEREST SEEKING TO EXERCISE THE RIGHTS OF THE DEBTOR'S ESTATE, INCLUDING, WITHOUT LIMITATION, ANY CHAPTER 11 OR CHAPTER 7 TRUSTEE.

9.    <u>No Additional Liens</u>.

Subject to the entry of the Final Order, except as expressly consented to in writing by LaSalle, or as otherwise provided herein, the Debtor is hereby prohibited at all times during the Case from granting liens on and security interests in the Senior Pre-Petition Collateral, the Post-Petition Collateral, or any portion thereof, to any other party, pursuant to section 364 of the Code or otherwise, which liens and security interests, as the case may be, are senior to, or on a parity with, the Senior Pre-Petition Liens or the liens granted to LaSalle by this Order (excluding (a) any replacement liens, provided, however such replacement liens shall have the same priority as such liens had before the Petition Date, and (b) liens transferred by Order of the Court, provided such liens shall have the same priority as such liens had before the Petition Date), unless the proceeds of any loan obtained by granting such liens and security interests are used to indefeasibly pay in full the Pre-Petition Debt and all post-petition debt incurred pursuant to the terms of this Order and the DIP Loan Agreement.

10.    <u>Financing Documents; Conflicts; Existing Bank Accounts</u>.

(a)    The Debtor is authorized and directed to do and perform all acts, to make, execute and deliver all instruments and documents (including, without limitation, the DIP Loan Agreement and additional security agreements, mortgages and financing statements) and to pay, as such become due, fees and expenses that may be required or necessary for the Debtor's performance hereunder, and under the DIP Loan Agreement including, without limitation: (i) fees and other expenses described in this Interim Order, in the DIP Loan Agreement or (subject to section 506(b) of the Bankruptcy Code) the Loan Agreement (other than fees and expenses of the Debtor's professionals, which fees and expenses may only be paid upon entry of an order of this

Court), (ii) agent fees, (iii) commitment fees, (iv) letter of credit fees, (v) facility fees, and (vi) reasonable fees and expenses of attorneys, financial advisers and accountants retained by LaSalle and its professionals.

(b)    Except as modified by this Interim Order, the Loan Agreement shall remain in full force and effect with respect to the Pre-Petition Debt. To the extent there exists any conflict between the Motion, this Interim Order, and the terms of either the Loan Agreement or the DIP Loan Agreement, this Interim Order shall govern and control.

(c)    Except as otherwise provided in Section 13(e) of the DIP Loan Agreement, the Debtor is authorized to use its pre-petition bank accounts as post-petition debtor-in-possession bank accounts. Neither LaSalle nor any of LaSalle's affiliates shall have any liability to any entity for processing any payment in the form of an item, draft, payment order, or instrument, including without limitation, payments by check, wire transfer, ACH transfer or otherwise (individually, a "Payment", and collectively, the "Payments"), with respect to any of the Debtor's bank accounts at LaSalle or any of LaSalle's affiliates. LaSalle shall have no obligation to determine whether any Payment is authorized either by this Court or by the Code, and shall have no liability for making any payment.

11.    Independent Actions of the Debtor.

The Debtor acknowledges that its promises and actions contained herein are made and taken of its own free will and volition. The Debtor acknowledges that it has chosen, of its own free and voluntary act, its legal counsel and financial advisors.

12.    Automatic Perfection.

The Post-Petition Liens and all other liens and security interests granted herein shall, pursuant to this Interim Order, be, and they hereby are, deemed automatically perfected, and no further notice, filing or other act shall be required to effect such perfection; provided, however, if LaSalle shall, in its sole discretion, choose to file such mortgages, financing statements, notices of liens and security interests and other similar documents, all such mortgages, financing statements or similar documents shall be deemed to have been filed or recorded at the time and on the date of entry of this Interim Order, and the automatic stay of section 362 of the Bankruptcy Code is hereby vacated to permit such filings.

13.    Amendments.

(a)    Nothing herein shall prohibit the Debtor and LaSalle from amending the terms of the financing or the DIP Loan Agreement authorized hereby by mutual agreement and upon motion to the Court and entry of an order approving any such amendment.

(b)    Based on the findings set forth in paragraphs K and N of this Interim Order and in accordance with section 364(e) of the Code, which is applicable to the post-petition financing arrangements authorized and approved by this Interim Order, in the event any or all of the provisions of the Interim Order are hereafter modified, amended or vacated, or this Interim Order is reversed, by a subsequent order of this or any other Court, no such modification, amendment, vacation or reversal shall affect the validity and enforceability of any post-petitions extensions of credit and other financial accommodations provided by LaSalle to the Debtor prior to the modification, amendment, vacation or reversal of this Interim Order, or to the liens, security interests

or priority authorized or created hereby.   Notwithstanding any such modification,
amendment, vacation or reversal, any claim granted to LaSalle hereunder or under the
DIP Loan Agreement, arising prior to the effective date of such modification,
amendment or vacation, shall be governed in all respects by the original provisions of
this Interim Order, and LaSalle, shall be entitled to all of the rights, remedies, privileges
and benefits, including the liens and priorities granted herein and in the DIP Loan
Agreement, with respect to any such claim.

    14.    Final Hearing.

The Debtor shall, within three (3) business days after entry of the Interim Order,
serve by United States mail, first class postage prepaid, copies of the Motion, this
Interim Order, the proposed Final Order and a notice of the hearing (the "**Final Hearing
Notice**") to be held on _March_ 11, 2008, at _10:30_ a.m., to consider entry of the
proposed Final Order on: (a) counsel to the Committee or, in the absence of a
Committee or Committee counsel, on the entities set forth on the list of the Debtor's
twenty largest unsecured creditors; (b) the Office of the United States Trustee;
(c) counsel to LaSalle; (d) Peninsula, (e) the Subordinated Lenders, (f) all parties known
to the Debtor to claim any lien on or security interest in any of the Debtor's assets;
(g) the Internal Revenue Service; and (h) all parties who have timely filed requests for
notice under Bankruptcy Rule 2002.  The Final Hearing Notice shall state that any party
in interest objecting to the entry of the proposed Final Order shall file written objections
with the United States Bankruptcy Court Clerk for the Northern District of Illinois no later
than 4:30 p.m. on _March_ 7, 2008, prevailing Chicago time, which objections shall
be served so that the same are received on or before such date by:

(a)     Perkins Coie LLP – Attention: Daniel A. Zazove, 131 South Dearborn Street, Suite 1700, Chicago, Illinois, phone (312) 324-8400, fax (312) 324-9400, e-mail: dzazove@perkinscoie.com, counsel to the Debtor;

(b)     Schwartz Cooper Chartered – Attention: Richard M. Bendix, Jr., 180 North LaSalle Street, Suite 2700, Chicago, IL 60601, phone (312) 346-1300, fax: (312) 264-2418, email: rbendix@schwartzcooper.com, counsel to LaSalle;

(c)     The Office of the United States Trustee for the Northern District of Illinois, 227 W. Monroe St., Suite 3350, Chicago, Illinois, 60606.

15.     No Waiver.

Notwithstanding anything to the contrary herein, the entry of this Interim Order is without prejudice to, and does not constitute a waiver of, expressly or implicitly, or otherwise impair (a) any of the rights of LaSalle under the Code or under non-bankruptcy law, including, without limitation, LaSalle's right to (i) request adequate protection of its interest in the Senior Pre-Petition Collateral or the Post-Petition Collateral or relief from or modification of the automatic stay extant under section 362(a) of the Code, (ii) request either dismissal of the Case or conversion of the Case to a case under chapter 7 of the Code, or the appointment of a chapter 11 trustee, and (iii) propose, subject to the provisions of section 1121 of the Bankruptcy Code, a chapter 11 plan or plans or (b) any of LaSalle's other rights, claims or privileges (whether legal, equitable or otherwise).

This Interim Order shall constitute findings of fact and conclusions of law and shall take effect immediately upon execution hereof. There is no just reason to delay enforcement or appeal of this Interim Order.

All terms and conditions of this Interim Order and the DIP Loan Agreement that vary from Local Rule 4001-2, including, without limitation, those that are highlighted in the Motion, are fully enforceable, notwithstanding Local Rule 4001-2.

Dated: January __, 2008                  ENTERED:

                                         _____
                                         United States Bankruptcy Judge

                                         FEB 1 9 2008

**AGREED:**

INGEAR CORPORATION

By: _____
    One of its attorneys

DANIEL A ZAZOVE
BRIAN AUDETTE
PERKINS COIE LLP
131 S. Dearborn Street
Chicago, IL 60603
Phone: 312-324-8400
Fax: 312-324-9400


LASALLE BUSINESS CREDIT LLC

By: _____
    One of its attorneys

RICHARD M. BENDIX, JR. (#0168130)
SCHWARTZ COOPER CHARTERED
180 North LaSalle Street, Suite 2700
Chicago, Illinois  60601
Phone: (312) 346-1300
Fax: (312) 264-2418
rbendix@schwartzcooper.com

## EXHIBIT A

**DIP Loan Agreement**
**Approved pursuant to Court Order dated February 14, 2008**

**InGear**
**Cash Flow and Collateral Projections for Liquidation Period**

## Major Assumptions Used in Projections:

1  All inventory is being sold the week of 3/14/08 in a liquidation sale which will have been pre-negotiated, sale is estimated to be at 30% of cost.

2  The company providing InGear's internet, computer and communication services with the California warehouse, is owed $90,000, extra expenses are in February to provide for moving computer systems, add'l money is in March for them.

3  Projection assumes that the bank will prevail on the matter of the California Warehouse's lien on processing charges.  The only payments being shown going to them are for current charges and for the outstanding storage charges.

4  Beginning AR has had all deductions that the Company has had taken by customers and/or have been notified of by a customer.  It also excludes the $418,000 due to them from WalMart International

5  Company is discontinuing credit insurance

6  All property, workers' comp and liability coverages remain in force.

7  Employee dental, vision and disability coverages are dropped as of 2/1/08, medical continues on, the only expenses reflected are for the continuing employees

8  Rent on the office has been negotiated to $10,000 per month

9  $17,000 is paid to Chicago warehouse to catch up on amounts due and to allow for release of merchandise.

10  There is and estimated $4,941,000 of LC business lined up with WalMart for which InGear will realize a 9% profit. Profit is being added to AR on date of sale with collection followed five weeks later.  $816,000 of these orders have been received.

11  Existing AR and Regular sales are projected to be paid @ 93% now that the retailer end of year deductions have been taken.  Balances are projected to be paid approximately 6 weeks after sale date.

PRELIMINARY DRAFT

InGear_Liquidation Analysis v14 (chapter 11).xls

PRELIMINARY DRAFT

**LinGear Corp**
**Weekly Collateral and Cash Analysis**

| Week Ending | WK1 Budgeted 2/8 to 2/15 | WK2 Budgeted 02/22/2008 | WK3 Budgeted 02/29/2008 | Month of February Post-Petition Budgeted | WK4 Budgeted 03/07/2008 | WK5 Budgeted 03/14/2008 | WK6 Budgeted 03/21/2008 | WK7 Budgeted 03/28/2008 | Month of March Budgeted |
|---|---|---|---|---|---|---|---|---|---|
| **ACCOUNTS RECEIVABLE** | | | | | | | | | |
| **SALES** | | | | | | | | | |
| **BEGINNING BALANCE** | $ 2,555,477 | $ 1,045,677 | $ 1,535,677 | $ 20 | $ 889,677 | $ 962,577 | $ 566,777 | $ 578,377 | $ 885,027 |
| Liquidation Sales estimated @ 30% | | | | | | | | | |
| Other | | | | | 1,565,000 | | | | 1,565,000 |
| Net Margin on WalMart Sales | | | | | 73,400 | 22,500 | 22,500 | | 115,900 |
| Discounts | | | | | | | | | |
| Deductions obligated @ 5% of Cash Receipts (excl receipts & Liquidation sales and LC sales) | (45,000) | (19,900) | (30,300) | (69,800) | | (19,900) | (900) | (25,900) | (46,300) |
| **Total Sales** | (45,000) | (19,900) | (30,300) | (69,800) | 73,400 | 2,900 | 400 | (19,900) | 1,665,800 |
| **CASH RECEIPTS** | | | | | | | | | |
| Cash - Net | | | | | | | | | |
| Receipts on AR Existing as of 1/30/08 | 392,200 | 398,700 | 625,300 | 1,396,000 | 500 | 398,400 | 80,400 | 397,300 | 806,800 |
| Receipts on LC Sales to WalMart - 5 wks after sale | | | | | | 1,565,000 | | | 1,565,000 |
| Receipts on sale | | | | | | | | | |
| **Total Cash Receipts** | 392,200 | 398,700 | 695,100 | 1,350,000 | 500 | 1,963,400 | 80,400 | 397,300 | 2,371,800 |
| **ENDING ACCOUNTS RECEIVABLE BALANCE** | $ 1,945,577 | $ 1,535,677 | $ 889,677 | $ 889,677 | $ 962,577 | $ 566,777 | $ 578,377 | $ 384,077 | $ 384,077 |
| **INVENTORY:** | | | | | | | | | |
| **ON HAND INVENTORY (incld WIP):** | | | | | | | | | |
| **BEGINNING BALANCE** | 418,826 | 419,724 | 636,964 | 1,914,260 | 465 | 419,336 | 10,862 | 418,376 | 896,647 |
| Plus Internal Receipts | $ 1,396,967 | $ 5,172,659 | $ 5,172,659 | $ 5,126,965 | $ 5,217,661 | $ 5,217,661 | | | $ 5,217,661 |
| Plus Overhead Allocation | 29,670 | 29,222 | 29,222 | 58,892 | 58,892 | | | | |
| Less Cost of Sales | 16,021 | | 17,780 | 31,803 | | | | | |
| Liquidation Sales | | | | | | 5,217,661 | | | 5,217,661 |
| Less Adjustments | | | | | | | | | |
| **ENDING BALANCE On Hand** | $ 5,172,659 | $ 5,172,659 | $ 5,217,661 | $ 5,217,661 | $ 5,217,661 | $ 5,217,661 | | | |
| **IN TRANSIT INVENTORY:** | | | | | | | | | |
| **BEGINNING BALANCE** | $ 58,892 | $ 29,222 | $ 29,222 | $ 58,892 | | | | | |
| Plus Purchases on Credit | | | | 54,892 | | | | | |
| Plus Purchases - COD | 29,670 | | 29,222 | 58,892 | | | | | |
| Plus Purchase - COD | | | | | | | | | |
| Less Receipts into On Hand | | | | | | | | | |
| Less Adjustment | | | | | | | | | |
| **ENDING BALANCE IN Transit Inventory** | $ 29,222 | $ 29,222 | | | | | | | |
| **TOTAL INVENTORY** | $ 5,201,881 | $ 5,201,881 | $ 5,217,661 | $ 5,217,661 | $ 5,217,661 | | | | |

**InGear Corp**
**Weekly Collateral and Cash Analysis**

PRELIMINARY DRAFT

InGear_Liquidation Analysis v14 (chapter 11).xls

## CASH DISBURSEMENTS

| Week Ending | WK1 Budgeted 2/8 to 2/15 | WK2 Budgeted 02/22/2008 | WK3 Budgeted 02/29/2008 | Month of February Past Position Budgeted | WK4 Budgeted 03/07/2008 | WK5 Budgeted 03/14/2008 | WK6 Budgeted 03/21/2008 | WK7 Budgeted 03/28/2008 | Month of March Budgeted |
|---|---|---|---|---|---|---|---|---|---|
| Duties | | | | | | | | | 637,905 |
| Ocean Freight | 5,000 | 17,500 | 5,000 | 10,000 | | | 575,000 | | 73,905 |
| Warehousing: Storage Charges | | | | 17,500 | 62,600 | 73,300 | | | 43,755 |
| Warehousing - Duty Processing Charges | | | | | | 43,300 | | | |
| Royalties | | | | - | - | - | - | - | - |
| Sales Rep Commissions | | | | - | - | - | - | - | - |
| Credit Insurance - Servs/Knwl | | | | - | - | - | - | - | - |
| Credit Insurance - Other | | | | - | - | - | - | - | - |
| Customs/Pooling | | | | - | - | - | - | - | - |
| Cartoon/Printing | | | | - | - | - | - | - | - |
| EDI Service Chart | | | | - | - | - | - | - | - |
| Computer Services *** (used approx $90K) | | 10,000 | | 10,000 | 10,000 | | | | - |
| Freight / W/H Sample Charges | 7,500 | 7,500 | | 15,000 | | 4,500 | | | 4,500 |
| Travel expenses for Selling Mktg | 3,000 | 3,000 | | 6,000 | | | | | |
| **Inventory and Selling Expenses** | **15,500** | **37,500** | **5,000** | **58,000** | **62,600** | **120,600** | **575,000** | **-** | **758,000** |
| **Operating Expenses:** | | | | | | | | | |
| Payroll - Gross | | | | | 20,990 | | | | 31,600 |
| Amt funded to Payroll Checking | 73,832 | 41,900 | | 43,900 | (20,990) | | 16,700 | | (31,600) |
| Employer's Payroll Taxes | | 3,900 | | 77,732 | 3,900 | | (10,700) | | 2,800 |
| Employee 401k Deduct | | | | | | | 900 | | 2,800 |
| Health Insurance | | 6,000 | | 6,000 | | 2,000 | | | 2,000 |
| Insurance - WC, Prop & Liab | 22,500 | | | 22,500 | 21,500 | | | | 22,500 |
| Lease and Rent | 10,000 | | | 10,000 | 10,200 | | | | 10,000 |
| D&O Insurance | 2,859 | | | 2,859 | | | | | |
| Auto Expense | | | | | | | | 550 | 500 |
| Employee Expenses | | | 1,000 | 1,000 | | 10,000 | 10,000 | 12,700 | 40,000 |
| Accounting and Payroll Tax Services | 1,000 | 1,000 | 1,000 | 3,000 | 1,000 | 1,000 | 1,000 | 1,000 | 4,500 |
| Legal | | 7,000 | | 7,000 | | | | | |
| Other | 5,000 | | | 5,000 | 5,000 | | | | 3,000 |
| Shanghai Office Closure expenses | | | | | | | | | |
| Utilities | | | | | | | | | |
| **Total Operating Expense** | **148,191** | **59,100** | **2,000** | **176,591** | **89,400** | **83,000** | **41,900** | **41,500** | **86,500** |
| **Other Cash In/Outflows** | | | | | | | | | |
| Interest | 75,000 | 33,000 | 20,000 | 75,000 | 2,800 | 20,000 | 7,500 | 7,500 | 2,800 |
| Restructuring Professionals | 75,000 | 13,000 | 30,000 | 45,000 | 15,000 | 20,000 | | | 48,000 |
| Other Cash (in)/Outflows | 75,000 | 25,000 | 20,000 | 20,000 | | 20,000 | 7,500 | 7,500 | 53,000 |
| **Cash Out Flows** | **(805,491)** | **(132,300)** | **(27,000)** | **(954,991)** | **(130,000)** | **(155,600)** | **(594,000)** | **(39,000)** | **(897,600)** |

3:57 PM 02/13/2008

PRELIMINARY DRAFT

**InGear Corp**
**Weekly Collateral and Cash Analysis**

| Week Ending | WK1 Budgeted 2/8 to 2/15 | WK2 Budgeted 02/22/2008 | WK3 Budgeted 02/29/2008 | Month of February Post Petition Budgeted | WK4 Budgeted 03/07/2008 | WK5 Budgeted 03/14/2008 | WK6 Budgeted 03/21/2008 | WK7 Budgeted 03/28/2008 | Month of March Budgeted |
|---|---|---|---|---|---|---|---|---|---|
| **Walmart Sales Made thru Back to Back LC's** | | | | | 135,000 | 250,000 | 250,000 | 450,000 | 1,766,000 |
| **Projection Debt:** | | | | | | | | | |
| Beginning Balance | 8,164,259 | 8,552,059 | 8,153,359 | 8,164,259 | 7,548,259 | 7,547,759 | 5,584,459 | 5,574,459 | 7,548,259 |
| Additions | (392,200) | (398,700) | (695,100) | (1,396,000) | (500) | (1,963,400) | (10,400) | (1,997,500) | (2,371,800) |
| A/R Cash Receipts | | | | | | | | | |
| Payments to Vendor | | | | | | | | | |
| Payments on LC's | | | | | | | | | |
| Non A/R Cash Receipts - Walmart LC's | (392,200) | (398,700) | (695,100) | (1,396,000) | | | | (397,500) | (2,371,800) |
| Change | 8,552,059 | 8,153,359 | 7,548,259 | 7,548,259 | 7,547,759 | 5,584,459 | 5,574,459 | 5,176,459 | 5,176,459 |
| Ending Loan Balance - Walmart LC's | | | | | | | | | |
| **DIP Loan:** | | | | | | | | | |
| Beginning Balance | 205,691 | 205,601 | 835,114 | 205,691 | 842,114 | 1,133,409 | 1,841,127 | 1,955,527 | 842,114 |
| Additions | | 122,100 | 27,000 | 354,994 | 130,800 | 153,400 | 294,400 | 19,000 | 897,600 |
| A/R Cash Receipts | | | | | | | | | |
| Payments to Vendor | | | | | | | | | |
| Payments on LC's | 487,123 | 487,123 | 487,123 | 487,123 | | | | | |
| Non A/R Cash Receipts - Walmart LC's | 205,601 | 609,483 | 23,000 | 842,114 | 290,895 | 208,118 | 994,400 | 61,025 | 897,600 |
| Change | 205,691 | 835,114 | 842,114 | 842,114 | 1,133,409 | 1,344,487 | 1,935,527 | 1,999,452 | 1,999,452 |
| Ending Loan Balance | | | | | | | | 7.89% | 7.89% |
| **Letters of Credit Outstanding:** | | | | | | | | | |
| Beginning Balance | 776,243 | 776,243 | 289,120 | 776,243 | 289,120 | 148,025 | 148,025 | 189,120 | 189,120 |
| Add'l LC's | | | | | 160,095 | 290,000 | 250,000 | 450,000 | 1,766,000 |
| Payments on LC's | | 487,123 | 487,123 | 487,123 | 160,095 | 54,718 | 54,718 | 44,625 | 259,438 |
| Ending Letters of Credit O/S | 776,243 | 289,120 | 289,120 | 289,120 | 945,025 | 1,140,307 | 1,900,307 | 1,795,682 | 1,795,682 |
| **Total Bank Exposure** | 9,533,993 | 9,277,593 | 8,679,493 | 8,679,493 | 9,625,793 | 8,069,193 | 8,899,793 | 8,971,593 | 8,971,593 |
| **BORROWING BASE:** | | | | | | | | | |
| Accounts Receivable Balance | 1,543,677 | 1,525,027 | 889,677 | 889,677 | 962,577 | 566,773 | 578,327 | 201,477 | 201,477 |
| Total Ineligible | 59,000 | 59,000 | 50,000 | 50,000 | 173,400 | 148,000 | 140,000 | 20,143 | 201,477 |
| Eligible Accounts Receivable | 1,893,677 | 1,475,027 | 839,677 | 839,677 | 839,177 | 425,871 | 439,477 | | |
| Advance Rate | 85% | 85% | 85% | 85% | 85% | 85% | 85% | 85% | 85% |
| Available Accounts Receivable | 1,604,625 | 1,253,815 | 713,725 | 713,725 | 713,300 | 344,995 | 371,455 | | |
| **Inventory:** | | | | | | | | | |
| Inventory in Transit | 29,322 | 29,133 | | | | | | | |
| Inventory on hand | 5,172,659 | 5,172,559 | 5,217,661 | 5,217,661 | 5,217,661 | | | | |
| Total Inventory | 5,201,981 | 5,201,692 | 5,217,661 | 5,217,661 | 5,217,661 | | | | |
| Ineligible Inventory | 85,000 | 85,000 | 85,000 | 85,000 | 85,000 | | | | |
| Eligible Inventory | 5,116,981 | 5,116,881 | 5,132,661 | 5,132,661 | 5,132,661 | | | | |
| Advance Rate | 60% | 60% | 60% | 60% | 60% | 60% | 60% | 60% | 60% |
| Availability from Inventory | 3,070,128 | 3,070,128 | 3,079,596 | 3,079,596 | 3,079,596 | | | | |
| **LC's Issued in InGear (v Walmart)** | | | | | 816,000 | 1,066,000 | 1,316,000 | 1,766,000 | 1,766,000 |
| **Total Availability $% A/R, Inven & LC Coll** | 4,679,754 | 4,323,944 | 3,793,322 | 3,793,322 | 4,608,897 | 1,437,995 | 1,687,455 | 1,766,600 | 1,766,000 |
| Cap | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 |
| Lesser of Eligible Collateral or Cap | 4,679,754 | 4,323,944 | 3,793,322 | 3,793,322 | 4,608,897 | 1,437,995 | 1,687,455 | 1,766,600 | 1,766,000 |
| Less: Current Line Balance | 8,552,059 | 8,153,359 | 7,548,259 | 7,547,759 | 5,584,359 | 5,573,959 | 3,176,459 | 3,176,459 | 5,176,459 |
| Less: Ending Letters of Credit O/S | 776,243 | 289,120 | 289,120 | 289,120 | 945,025 | 1,140,307 | 1,900,307 | 2,795,682 | 1,795,682 |
| **Available (Overadvance)** | (4,648,548) | (4,118,535) | (4,044,057) | (4,043,057) | (3,583,487) | (5,276,670) | (5,376,410) | (5,206,141) | (5,206,141) |

**InGear Corp**
Weekly Collateral and Cash Analysis

PRELIMINARY DRAFT

| | WK8 Budgeted 04/04/2008 | WK9 Budgeted 04/11/2008 | WK10 Budgeted 04/18/2008 | WK11 Budgeted 04/25/2008 | WK12 Budgeted 05/02/2008 | Month of April Budgeted | WK13 Budgeted 05/09/2008 | WK14 Budgeted 05/16/2008 | WK15 Budgeted 05/23/2008 | WK16 Budgeted 05/30/2008 | Month of May Budgeted | From 4/26 to 5/31 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **ACCOUNTS RECEIVABLE** | | | | | | | | | | | | |
| BEGINNING BALANCE | $ 201,477 | $ 222,973 | $ 203,577 | $ 236,077 | $ 248,577 | $ 201,477 | $ 253,077 | $ 273,277 | $ 246,277 | $ 201,277 | $ | $ 1,315,477 |
| **SALES** | | | | | | | | | | | | |
| Liquidation Sales estimated @ 30% | | | | | | | | | | | | $ 1,565,800 |
| Other | 24,000 | 54,000 | 45,000 | 45,000 | 45,000 | 28 | 45,000 | 27,000 | | | | 444,700 |
| Net Margin on WalMart Sales | | | | | | | | | | | | $110,300 |
| Discount | | | | | | | | | | | | |
| Deductions estimated @ 5% of Cash Receipts excl receipts fr Liquidation sales and LC sales) | (200) | (200) | | | (200) | (200) | | | | | | ($116,300) |
| **Total Sales** | 24,600 | 54,000 | 45,000 | 45,000 | 45,000 | 213,600 | 45,000 | 27,000 | | | | $1,899,460 |
| **CASH RECEIPTS** | | | | | | | | | | | | |
| Cash - Net | | | | | | | | | | | | |
| Receipts on AR Existing as of 1/30/08 | 3,100 | | | | | 3,100 | | | | | | 2,205,900 |
| Receipts on LC Sales to WalMart - 5 wks after sal | | 73,400 | 22,500 | 22,500 | 40,500 | 159,400 | 24,900 | 54,000 | 45,000 | 45,000 | 168,900 | 327,700 |
| Receipts on sales | 3,100 | 73,400 | 22,500 | 22,500 | 40,500 | 162,000 | 24,900 | 54,000 | 45,000 | 45,000 | 168,900 | $1,563,000 |
| **Total Cash Receipts** | $ 3,100 | $ 73,400 | $ 22,500 | $ 22,500 | $ 40,500 | $ 162,000 | $ 24,900 | $ 54,000 | $ 45,000 | $ 45,000 | $ 168,900 | $ 4,096,600 |
| **ENDING ACCOUNTS RECEIVABLE BALANCE** | $ 222,977 | $ 203,577 | $ 236,077 | $ 248,577 | $ 253,077 | $ 253,077 | $ 273,277 | $ 246,277 | $ 201,277 | $ 156,277 | $ 156,277 | $ 156,277 |
| **INVENTORY:** | | | | | | | | | | | | |
| **ON HAND INVENTORY (excls WIP):** | | | | | | | | | | | | |
| BEGINNING BALANCE | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ 5,250,562 |
| Plus: Inbound Receipts | | | | | | | | | | | | 54,892 |
| Plus: Overhead Allocation | | | | | | | | | | | | 31,802 |
| Less: Cost of Sales | | | | | | | | | | | | 5,217,662 |
| Liquidation Sales | | | | | | | | | | | | |
| Less: Adjustments | | | | | | | | | | | | |
| **ENDING BALANCE On Hand** | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ |
| **INTRANSIT INVENTORY:** | | | | | | | | | | | | |
| BEGINNING BALANCE | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ 58,892 |
| Plus: Purchases on Credit | | | | | | | | | | | | |
| Plus: Purchases - COD | | | | | | | | | | | | |
| Less: Receipts into On Hand | | | | | | | | | | | | 58,892 |
| Less: Adjustments | | | | | | | | | | | | |
| **ENDING BALANCE IN Transit Inventory** | $ | $ 41 | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ |
| **TOTAL INVENTORY** | $ 3,273 | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ | $ |

InGear Corp
Weekly Collateral and Cash Analysis

PRELIMINARY DRAFT

| Week Ending | WK5 Budgeted 04/04/2008 | WK9 Budgeted 04/11/2008 | WK10 Budgeted 04/18/2008 | WK11 Budgeted 04/25/2008 | WK12 Budgeted 05/02/2008 | Month of April Budgeted | WK13 Budgeted 05/09/2008 | WK14 Budgeted 05/16/2008 | WK15 Budgeted 05/23/2008 | WK16 Budgeted 05/30/2008 | Month of May Budgeted | From 1/24 to 5/24 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **CASH DISBURSEMENTS** | | | | | | | | | | | | |
| Duties | - | - | - | - | - | - | - | - | - | - | - | 20,000 |
| Ocean Freight | - | - | - | - | - | - | - | - | - | - | - | 654,664 |
| Warehousing - Storage Charges | - | - | - | - | - | - | - | - | - | - | - | 73,206 |
| Warehousing - Order Processing Charges | - | - | - | - | - | - | - | - | - | - | - | 43,286 |
| Royalties | - | - | - | - | - | - | - | - | - | - | - | - |
| Sales Reps Commissions | - | - | - | - | - | - | - | - | - | - | - | - |
| Credit Insurance - Stars/Kmart | - | - | - | - | - | - | - | - | - | - | - | - |
| Credit Insurance - Other | - | - | - | - | - | - | - | - | - | - | - | - |
| Carton/Printing | - | - | - | - | - | - | - | - | - | - | - | - |
| EDI Service - Civil | - | - | - | - | - | - | - | - | - | - | - | - |
| Computer Services ???? (extnd support $50K) | - | - | - | - | - | - | - | - | - | - | - | 14,920 |
| Freight / WB Sample Charges | - | - | - | - | - | - | - | - | - | - | - | 15,000 |
| Travel expenses for Selling Mtgs | - | - | - | - | - | - | - | - | - | - | - | 6,000 |
| **Inventory and Selling Expenses** | - | - | - | - | - | - | - | - | - | - | - | 816,000 |
| **Operating Expenses** | | | | | | | | | | | | |
| Payroll - Gross | 2,800 | - | 2,800 | - | - | 5,600 | 2,800 | - | 2,800 | 17,200 | 23,400 | 722,586 |
| Amt funded - Payroll Checking | - | - | - | - | - | - | - | - | - | - | - | (31,601) |
| Employer's Payroll Taxes | 200 | - | 200 | - | - | 400 | 200 | - | 200 | 1,800 | 1,800 | 82,752 |
| Employees 401k Elections | - | - | - | - | - | - | - | - | - | - | - | - |
| Health Insurance | - | - | - | - | - | - | - | - | - | - | - | 8,000 |
| Insurance - WC, Prop & Liab | - | - | - | - | - | - | - | - | - | - | - | 45,000 |
| Lease and Rent | - | - | - | - | - | - | - | - | - | - | - | 20,000 |
| D&O Insurance | - | - | - | - | - | - | - | - | - | - | - | 2,657 |
| Auto Expense | - | - | - | - | - | - | - | - | - | - | - | - |
| Employee Expenses | - | - | - | - | - | - | - | - | - | - | - | 1,350 |
| Accounting and Payroll Tax Services | 10,000 | 10,000 | 10,000 | 10,000 | 10,000 | 50,000 | - | - | - | - | - | 90,000 |
| Legal | 3,000 | 1,000 | 1,000 | 1,000 | 1,000 | 5,000 | - | - | - | - | - | 22,000 |
| Other | - | - | - | - | - | - | - | - | - | - | - | 7,100 |
| Shanghai Office Closure expense | - | - | - | - | - | - | - | - | - | - | - | - |
| Utilities | 500 | - | - | - | - | 500 | - | - | - | - | - | 16,586 |
| **Total Operating Expenses** | 14,500 | 11,000 | 14,000 | 11,000 | 11,000 | 61,500 | 3,000 | - | 3,000 | 19,200 | 25,200 | 980,491 |
| **Other Cash In/(Outflows)** | | | | | | | | | | | | |
| Interest | 9,300 | 2,500 | 2,500 | 2,500 | 2,500 | 9,300 | 19,200 | - | - | 30,000 | 49,200 | 136,280 |
| Restructuring Professionals | 2,500 | - | - | - | - | 22,200 | - | - | - | - | - | 107,500 |
| **Other Cash (Inflows)/Outflows** | 11,800 | 2,500 | 2,500 | 2,500 | 2,500 | 21,800 | 19,200 | - | - | 30,000 | 49,200 | 243,800 |
| **Cash Out Flows** | (26,300) | (13,500) | (16,500) | (13,500) | (13,500) | (83,300) | (22,200) | - | (3,000) | (49,200) | (74,400) | (1,410,291) |

# InGear Corp
## Weekly Collateral and Cash Analysis

PRELIMINARY DRAFT

| Week Ending | WK8 Budgeted 04/04/2008 | WK9 Budgeted 04/11/2008 | WK10 Budgeted 04/18/2008 | WK11 Budgeted 04/25/2008 | WK12 Budgeted 05/02/2008 | Month of April Budgeted | WK13 Budgeted 05/09/2008 | WK14 Budgeted 05/16/2008 | WK15 Budgeted 05/23/2008 | WK16 Budgeted 05/30/2008 | Month of May Budgeted | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Walmart Sales Made thru Back to Back LC's | 255,000 | 690,000 | 590,000 | 500,000 | 560,000 | 2,375,000 | 500,000 | 300,000 | | | 800,000 | From 10/31 to 5/31 |
| **Projection Data:** | | | | | | | | | | | | |
| Beginning Balance | $ 176,450 | 5,173,350 | 4,283,959 | 4,011,459 | 3,738,959 | 5,176,459 | 3,388,459 | 2,948,659 | 4,175,334 | 4,278,334 | | 4,941,000 |
| Additions | | | | | | | | | | | | 3,448,755 |
| AR Cash Receipts | (3,800) | (73,400) | (22,500) | (22,500) | (40,500) | (162,000) | (24,800) | (54,000) | (45,000) | (45,000) | | 44,058,000 |
| Payments to Vendor | | | | | | | | | | | | |
| Non AR Cash Receipts - Walmart LC's | (63,100) | (816,000) | (250,000) | (250,000) | (450,000) | (4450,000) | (255,000) | (608,000) | (500,000) | (500,000) | | (2,564,000) |
| Ending Loan Balance | 5,173,369 | 4,283,959 | 4,011,459 | 3,738,959 | 3,248,459 | 3,248,459 | 2,948,659 | 4,175,334 | 4,278,334 | 4,284,659 | | 5,931 |
| **DIP Loan:** | | | | | | | | | | | | |
| Beginning Balance | 1,999,152 | 2,025,652 | 2,854,652 | 3,171,652 | 3,380,452 | 1,999,152 | 3,868,452 | 4,175,334 | 4,278,334 | 4,278,334 | | 3,844,452 |
| Additions | 26,500 | 13,500 | 16,500 | 13,500 | 13,500 | 83,300 | 22,200 | 3,000 | 492,000 | 74,000 | | 74,200 |
| Payments on LC's | | 816,000 | 250,000 | 250,000 | 450,000 | 1,766,000 | 304,682 | 608,000 | 500,000 | 500,000 | | 1,964,682 |
| Non AR Cash Receipts - Walmart LC's | | | | | | | | | | | | |
| Change | 26,500 | 829,000 | 265,500 | 463,500 | 93,300 | 93,300 | 326,682 | 501,000 | 549,281 | 74,000 | | 5,837,534 |
| Ending Loan Balance | 2,025,652 | 2,854,652 | 3,171,652 | 3,386,952 | 3,444,452 | 3,444,452 | 4,175,334 | 4,775,334 | 5,725,334 | 5,837,534 | | 5,837,534 |
| **Letters of Credit Outstanding:** | 7.89% | | | | | 7.89% | | | | | | 7.89% |
| Beginning Balance | 1,785,682 | 2,070,682 | 1,854,682 | 2,104,682 | 2,354,682 | 1,785,682 | 2,484,682 | 2,606,000 | 2,360,000 | 1,800,000 | | 726,247 |
| Add'l LC's | 275,000 | 600,000 | 500,000 | 500,000 | 500,000 | 2,375,000 | 508,000 | 509,000 | 500,000 | 500,000 | | 4,943,000 |
| Payments on LC's | | 816,000 | 250,000 | 250,000 | 450,000 | 1,760,000 | 304,682 | 609,000 | 500,000 | 500,000 | | 4,317,341 |
| Ending Letters of Credit O/S | 2,070,682 | 1,854,682 | 2,104,682 | 2,354,682 | 2,484,682 | 2,484,682 | 2,606,000 | 2,300,000 | 1,300,000 | 1,300,000 | | 1,300,000 |
| **Total Bank Exposure** | 9,269,493 | 8,993,593 | 9,233,593 | 9,478,593 | 9,501,593 | 9,501,593 | 9,725,993 | 9,360,993 | 8,437,993 | 8,332,193 | | 8,332,193 |
| **BORROWING BASE:** | | | | | | | | | | | | Includes |
| Accounts Receivable Balance | 222,977 | 203,577 | 226,077 | 248,577 | 253,077 | 253,077 | 274,277 | 246,277 | 201,272 | 156,277 | | 117,000 |
| The Receivable | 222,977 | 203,577 | 226,077 | 248,577 | 253,077 | 248,577 | 274,277 | 246,277 | 201,272 | 156,277 | | Open AR on Walmart LC's |
| Eligible Accounts Receivable | | | | | | | | | | | | |
| Advance Rate | 85% | 85% | 85% | 85% | 85% | 85% | 85% | 85% | 85% | 85% | | 85% |
| Available Accounts Receivable | | | | | | 3,825 | | | | | | |
| **Inventory:** | | | | | | | | | | | | |
| Inventory in Transit | | | | | | | | | | | | |
| Inventory on Hand | | | | | | | | | | | | |
| Total Inventory | | | | | | | | | | | | |
| Ineligible Inventory | | | | | | | | | | | | |
| Eligible Inventory | | | | | | | | | | | | |
| Advance Rate | 60% | 60% | 60% | 60% | 60% | 60% | 60% | 60% | 60% | 60% | | 60% |
| Availability from Inventory | | | | | | | | | | | | |
| LC's Issued to InGear W/Walmart | 2,041,000 | 1,825,000 | 2,075,000 | 2,325,000 | 2,375,000 | 2,375,000 | 2,600,000 | 2,300,000 | 1,800,000 | 1,300,000 | | 1,300,000 |
| Total Availability fr A/R, Inven & LC Coll. | 2,041,000 | 1,825,000 | 2,075,000 | 2,325,000 | 2,375,000 | 2,378,825 | 2,600,000 | 2,300,000 | 1,800,000 | 1,300,000 | | 1,300,000 |
| Cap | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | 12,000,000 | | 12,000,000 |
| Letter of Eligible Collateral or Cap | 2,041,000 | 1,825,000 | 2,075,000 | 2,325,000 | 2,375,000 | 2,378,825 | 2,600,000 | 2,300,000 | 1,800,000 | 1,300,000 | | 1,300,000 |
| Less Current Line Balance | 5,173,369 | 4,283,959 | 4,011,459 | 3,738,959 | 3,248,459 | 3,248,459 | 2,948,659 | 2,284,659 | 1,749,659 | 1,284,659 | | 1,284,659 |
| Less Ending Letter of Credit O/S | 2,070,682 | 1,854,682 | 2,104,682 | 2,354,682 | 2,484,682 | 2,484,682 | 2,600,000 | 2,300,000 | 1,800,000 | 1,300,000 | | 1,300,000 |
| **Available (Overadvance)** | (5,203,041) | (4,313,641) | (4,041,141) | (3,768,641) | (3,278,141) | (3,274,316) | (2,948,659) | (2,284,659) | (1,749,659) | (1,284,659) | | (1,284,659) |

HiGear_Liquidation Analysis v14 (Sheet in 11).xls

3:57 PM 02/15/2008

InGear
Projected Payroll

| Employee | Salary | Monthly | Bi-Weekly 02/08/08 | Accrued Vacation | Monthly Benefits | Bi-Weekly 02/22/08 | Bi-Weekly 03/07/08 | Bi-Weekly 03/21/08 | Bi-Weekly 04/04/08 | Bi-Weekly 04/18/08 | Bi-Weekly 05/02/08 | Bi-Weekly 05/16/08 | Title |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Kevin A | $ 175,000 | 14,600 | 100% | 6,731 | | 995 | 5,345 | 6,731 | 6,731 | 6,731 | | | | Founder - Executive VP |
| Larry W | $ 175,000 | 14,600 | 100% | 6,731 | | 539 | 5,345 | | | | | | | Founder - Executive VP |
| Larry G | $ 175,000 | 14,600 | 100% | 6,731 | | 539 | 5,345 | | | | | | | Founder - CEO |
| Tom B | $ 120,000 | 10,000 | 100% | 4,615 | 26,717 | 176 | 3,692 | 8,731 | | | | | | CFO |
| Ilena G | $ 74,000 | 6,200 | 100% | 2,846 | 9,652 | | 2,846 | | 2,846 | 2,846 | 2,846 | 2,846 | 2,846 | Director of Finance - HR/AP |
| Tracy B | $ 96,000 | 8,000 | 100% | 3,692 | 12,112 | 175 | 3,692 | | | | | | | Vice President of Operations |
| Don A | $ 148,000 | 12,160 | 100% | 5,677 | 18,874 | 559 | 4,492 | 3,692 | 2,846 | | | | | Vice President of Sourcing |
| Maurice W | $ 68,000 | 5,700 | 100% | 2,615 | 3,640 | | 2,092 | | | | | | | Supply Team Manager - Wal-Mart/Sam's |
| Lisa E | $ 35,580 | 3,000 | 100% | 1,368 | 2,101 | 557 | 1,092 | 1,092 | 1,092 | | | | | Director Key Accounts |
| Ralph L | $ 170,000 | 14,200 | 100% | 6,538 | 6,266 | 599 | 6,538 | 6,538 | | | | | | Vice President Sales - Wal-Mart/Sam's Club |
| | $ 2,636,451 | $ 238,800 | | $ 78,932 | $ 188,513 | $ 3,233 | $ 41,915 | $ 29,909 | $ 10,868 | $ 2,846 | $ 2,846 | $ 2,846 | $ 2,846 | |
| | | $ (15,000) | | | | | | | | | | | | |
| | | $ 221,800 | | | | | | | | | | | | |

InGear_Liquidation Analysis v14 (chapter 11).xls